**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

**PASTOR WILLIE J. SUTTON, JR.**, and **ST. JOHN'S BAPTIST CHURCH, a Colorado nonprofit corporation,**

      Plaintiffs.

vs.

**ST. JOHN'S BAPTIST CHURCH GOVERNING BODY, INC., a Colorado nonprofit corporation,**

      Defendant.

---

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

Plaintiffs, Pastor Willie J. Sutton, Jr. ("**Pastor Sutton**" or "**Plaintiff**") and St. John's Baptist Church ("**St. John's**" or "the **Church**") (collectively, "**Plaintiffs**"), for their Verified Complaint for Declaratory and Injunctive Relief ("**Complaint**") state as follows:

<u>**THE PARTIES**</u>

1.    Plaintiff, Pastor Sutton, is an individual residing at 4992 Mount Union Ct., Colorado Springs, CO 80918.  Pastor Sutton is not engaged in military service of the United States, and is engaged in a civilian occupation.

2.    Plaintiff, St. John's, was incorporated on December 4, 1978, as a Colorado nonprofit corporation, with a principal place of business at 902 S. Prospect Street, Colorado Springs, Colorado.

3.      Defendant, St. John's Baptist Church Governing Body, Inc. ("**Defendant**" or

"**Governing Body**"), was incorporated on February 9, 2012, as a Colorado nonprofit corporation,

with a principal place of business at 6075 Castlewood Dr., Colorado Springs, Colorado.

<u>J</u><u>URISDICTION AND</u> <u>V</u><u>ENUE</u>

4.      Plaintiffs bring this declaratory relief action pursuant to the First and Fourteenth

Amendments of the United States Constitution; and the Declaratory Judgment Act, 28 U.S.C. §

2201, *et seq*.  Plaintiffs seek injunctive and declaratory relief against Defendant.  This Court has

jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5.      Venue is proper under 28 U.S.C. § 1391 because all or a substantial part of

the events or omissions giving rise to the claims herein occurred within this judicial district.  All

of the events alleged herein occurred within, and all of the parties are residents of, the State of

Colorado, County of El Paso.  Also, the Defendant is located, and maintains its principal address,

within the County of El Paso, Colorado as of the commencement of this action.

<u>G</u><u>ENERAL</u> <u>A</u><u>LLEGATIONS</u>

6.      This is an egregious case of federal constitutional violations that, despite a Court of

Appeals Mandate remedying such violations, continue to irreparably harm Pastor Sutton and St.

John's.  The below facts demonstrate there is a substantial controversy between parties having

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment.

7.      St. John's was founded in approximately 1887, and is El Paso County's oldest

African-American church.  The Church operates under governing documents consisting of bylaws,

a church covenant, articles of faith, and other resolutions.  Pursuant to its internal governance

procedures, in September 2007, the Church's Deacon Board extended an offer to Pastor Sutton to serve as the Church's Senior Pastor.  Pastor Sutton accepted the call, and in July 2008, was installed as Senior Pastor of the Church.

8.      Certain members of the Church immediately opposed the Church's action to install Plaintiff as Senior Pastor of the Church.  Only days after Pastor Sutton became Senior Pastor, some members of the Church filed a declaratory judgment action in the El Paso County District Court, challenging the Church's hiring of Plaintiff.  This case was dismissed by stipulation in September 2009.

9.      Several more court actions followed.  In December 2011, some Church members filed a second lawsuit against Pastor Sutton and other Church leaders.  Pastor Sutton and the other Church leaders prevailed on summary judgment on June 15, 2012, as the El Paso County District Court concluded that the First Amendment required dismissal of each the Church members' eight claims.  However, the court granted the Church members leave to file a second amended complaint. This case was later consolidated with a new defamation action against Pastor Sutton and a member of the Deacon Board.  According to judicial records, that court has since dismissed the consolidated case with prejudice.

10.     While the consolidated cases were pending, on February 9, 2012, some of the Church members from the consolidated cases incorporated the Governing Body.  Despite its use of a similar name, the Governing Body is not affiliated with the Church, nor does it represent the Church's internal governance or organization.

11.     On October 16, 2012, the Governing Body initiated the action, *St. John's Baptist Church Governing Body, Inc. vs. Willie J. Sutton, Jr.*, under Case Number 12CV4962 ("the

**Action**"), requesting that the El Paso County District Court ("**trial court**") determine who owned the Church's real property, among other things.  In the initial complaint, the Church was also listed as a plaintiff.

12.     The Governing Body did not serve Pastor Sutton with a summons and complaint. Rather, the Governing Body filed an amended complaint on January 23, 2013, removing the Church as a plaintiff.  The Church was not a party to the Action whatsoever.

13.     Even though the Church was removed as a party to the Action, the amended complaint of the Governing Body sought a judicial determination over the ownership rights of the Church's property.  In the amended complaint, the Governing Body requested the trial court to "peacefully determine who has the rights to the [Church] edifice;" and to enter a judgment that (1) the Governing Body, and not defendant, represented the Church's legal interests; (2) the Church had the rights to the edifice, subject to its mortgages; (3) defendant and his agents must turn over to the Governing Body's authorized agent all keys to the edifice; and (4) defendant and other named Church leaders who supported defendant would not be permitted to enter the edifice without the Governing Body's permission.

14.     A return of service indicates Pastor Sutton was personally served with a copy of the amended complaint on February 4, 2013.  Overwhelmed by the number of lawsuits filed against him, pleadings totaling over 1,400 pages, and without the benefit of an attorney at the time, Pastor Sutton failed to file an answer to the amended complaint in the Action.  The Governing Body filed a motion for entry of default judgment in the Action on March 4, 2013.

15.     The Honorable Barbara L. Hughes of the El Paso County District Court entered the Default Judgment in the Action on March 22, 2013.  (*See* **Exhibit 1**, Default Judgment.)  The trial

court ordered in the Default Judgment that (1) the Governing Body represents the legal interests of the Church; (2) Pastor Sutton does not represent the legal interests of the Church; (3) the Governing Body has all the legal rights to the Church edifice; and (4) Pastor Sutton has no legal rights to the Church edifice. *Id.* Further, the trial court ordered that the Governing Body could take possession of the Church's real property, and Pastor Sutton could not enter the property without a written invitation from the Governing Body's registered agent, and no other persons could enter the premises without a written or oral invitation from the Governing Body. *Id.*

16.    The effects of the Default Judgment were devastating.  Following the entry of the Default Judgment, the Governing Body requested the Colorado Springs Police Department remove Pastor Sutton from the Church.  After forcibly removing him from the Church's premises, the Governing Body changed the locks.

17.    Also following the entry of the Default Judgment, which granted complete Church control to the Governing Body, the Governing Body caused Amended and Restated Articles of Incorporation and several resolutions to be filed with the Colorado Secretary of State.  Such documents asserted that Pastor Sutton's employment contract with the Church had been terminated on October 23, 2011; Pastor Sutton had ceased being an authorized Church agent on that date; and Pastor Sutton could not legally enter the Church without first obtaining permission from seven of the Church's authorized agents.  In June 2013, the Governing Body reaffirmed the above noted resolutions, and in July, the Governing Body filed another corporate resolution terminating Pastor Sutton's Church membership and revoking all his membership rights.

18.    Pastor Sutton filed a Motion to Set Aside the Default Judgment in the Action on May 1, 2013.  Following an emergency telephone hearing, Judge Hughes declined to take action.

Pastor Sutton filed a Notice of Appeal on May 10, 2013, and his opening brief on September 19, 2013. The Governing Body filed its Answering Brief on October 24, 2013, and Pastor Sutton filed a Reply Brief on November 14, 2013. The Governing Body also filed a Motion to Dismiss the appeal on August 20, 2013.

19.     On March 20, 2014 (as modified on May 1, 2014), Pastor Sutton was vindicated by the Colorado Court of Appeals. In its Opinion, the Court of Appeals denied the Motion to Dismiss and held that the Governing Body's Default Judgment violated the First Amendment in that it made decisions regarding the ecclesiastical internal governance and organization of the Church, and thus the trial court lacked authority to enter the Default Judgment. (*See* **Exhibit 2**, Court of Appeals' Opinion issued March 20, 2014, as modified on May 1, 2014 ("**Opinion**"), at 13-14.) Further, the Court of Appeals found that the Default Judgment violated fundamental principles of due process under the Fourteenth Amendment because it made decisions regarding the real property of the Church, when the Church was never joined as a party. (*Id.* at 15.)

20.     In the concluding paragraph of the Opinion, the Court of Appeals vacated the Default Judgment, and remanded the case for determination of the underlying real property issues if: (i) the Governing Body files a second amended complaint including the Church as a party; and (ii) the District Court determines, in its judgment, that it can apply neutral principles of law in doing so. (*Id.* at 23.)

21.     On April 1, 2014, the Governing Body, pursuant to C.A.R. 40, moved the Colorado Court of Appeals to reconsider several findings in its Opinion. The Court of Appeals denied the Petition for Rehearing on May 1, 2014.

22.     On May 21, 2014, the Governing Body petitioned the Colorado Supreme Court for review of the Court of Appeals decision under C.A.R. 49, but the Colorado Supreme Court denied the Governing Body's Petition for Writ of Certiorari on March 23, 2015.  On that same day, the Court of Appeals issued its Mandate, vacating the Default Judgment—almost two years to the day after the trial court entered the Default Judgment on March 22, 2013.  (*See* **Exhibit 3**, Court of Appeals' Mandate.)

23.     Immediately following the issuance of the Mandate from the Court of Appeals, Pastor Sutton's counsel conferred with counsel for the Governing Body regarding a peaceful return of the Church and its property to Pastor Sutton and the Church's chosen leaders.  (*See* **Exhibit 4**, email from Pastor Sutton's counsel to Governing Body's counsel dated March 23, 2015, at 12:29 PM.)  Counsel for the Governing Body requested time to confer with his client, which was granted. On March 26, 2015, counsel for the Governing Body responded by email that he "will be able to arrange a transfer of the property before Easter Sunday [April 5, 2015]."  (*See* **Exhibit 5**, email from Governing Body's counsel to Pastor Sutton's counsel dated March 26, 2015, at 6:41 PM.)

24.     However, prior to Easter Sunday, the Governing Body reversed course, and refused to relinquish the Church property.  In an email dated April 1, 2015, counsel for the Governing Body retracted the offer to follow the Court of Appeals' Mandate and relinquish the Church, declaring that the Governing Body "is not in a mood to turn over the keys."  (*See* **Exhibit 6**, email from Governing Body's counsel to Pastor Sutton's counsel dated April 1, 2015, at 3:10 PM.)

25.     The next day, Pastor Sutton filed an Emergency Motion for Immediate Enforcement of the Appellate Mandate or Injunction to Preserve Assets ("**Motion to Enforce Mandate**") in the trial court, seeking judicial enforcement from the District Court of the Court of

Appeals' Mandate.  (*see* **Exhibit 7**, Emergency Motion for Immediate Enforcement of the Appellate Mandate or Injunction to Preserve Assets, filed by Pastor Sutton with the El Paso County District Court on April 2, 2015.)  In this motion, Pastor Sutton clearly explained the Governing Body's defiance of the Court of Appeals Mandate, and refusal to return the Church's property to the Church's chosen leaders.  (*Id.* at 5-6.)  The Motion to Enforce Mandate included the above-referenced emails from the Governing Body's attorney, promising a peaceful turnover of the Church's property, followed by a declaration that the Governing Body will not abide by the judicial Mandate, and "is not in a mood to turn over the keys."  Due to the Governing Body's declared intention to disregard the Court of Appeals' decision, and to retain the Church's property in contravention of the Mandate, Pastor Sutton moved the District Court to:

(i)     enforce the Mandate of the Court of Appeals;
(ii)    vacate the Default Judgment;
(iii)   return immediate possession and control of the Church, its governance, its real and personal property, and its bank accounts to Pastor Sutton;
(iv)    take and enforce all actions necessary to return the parties to their respective positions before entry of the Default Judgment;
(v)     issue an immediate injunction enjoining the Governing Body from transferring, assigning, selling, depleting, destroying, dissipating, or disbursing any Church property;
(vi)    award Pastor Sutton all of his costs and attorney fees in defending this matter; and
(vii)   provide such further relief as the District Court deems just and proper.

(*Id* at 8.)  The Motion to Enforce Mandate simply sought restoration of the Church's property to its rightful owners, from whom it was taken through the unconstitutional Default Judgment.

26.     The Governing Body did not file a response to the Motion to Enforce Mandate. Instead, two days prior to the Emergency Motion, on Saturday, March 28, 2015, the Governing Body filed Articles of Dissolution with the Colorado Secretary of State.  (*See* **Exhibit 8**, Articles of Dissolution for the Governing Body, filed with the Colorado Secretary of State on March 28,

2015.)  In a transparent attempt to avoid the Court of Appeals' Mandate, the Governing Body quickly dissolved itself just five days after the Mandate issued, and immediately claimed a new identity as an unincorporated association of St. John's Baptist Church.

27.    In response to the Motion to Enforce Mandate, those individuals formerly known as the Governing Body filed a Response, purportedly of behalf of the Church itself, objecting to the trial court returning the Church's property to Pastor Sutton.  (*See* **Exhibit 9**, Response of St. John's Baptist Church to be Added as 3rd Party Defendant and Preliminary Response to Defendant's Motions for Injunctive Relief, filed by the same individuals formerly comprising the Governing Body with the El Paso County District Court on April 3, 2015.)  In an ugly irony, the group formerly known as the Governing Body, now claiming to be the Church itself, objected to the reversal of the Default Judgment on the same First Amendment grounds on which the Default Judgment was overturned by the Court of Appeals.  (*See id.* at ¶ 7.)

28.    In reply, Pastor Sutton highlighted the absurdity of the Governing Body immediately dissolving itself after the Court of Appeals' Mandate, and then claiming to be the actual Church, in order to maintain the Church premises, citing the very constitutional principles it trampled upon to gain possession of the Church premises in the first place.  (*See* **Exhibit 10**, Reply to Response of St. John's Baptist Church to be Added as 3rd Party Defendant and Preliminary Response to Defendant's Motions for Injunctive Relief, filed by Pastor Sutton with the El Paso County District Court on April 6, 2015, at ¶¶ 35-41.)  Pastor Sutton described in detail the specific harms effectuated by the Default Judgment, including possession and control of the Church's premises being stripped from the Church's historical congregation and Pastor Sutton, and given to the Governing Body, with the legal authority to represent the interests of the Church.

(*Id.* at ¶ 21.)   Pastor Sutton urged the trial court to "restore the parties to their prior respective positions before entry of the Default Judgment," and return control of the Church's property to the historical Church under the guidance of Pastor Sutton and the Church's chosen Deacon Board and Administrative Board.   (*Id.* at ¶ 46.)

29.      In response, the dissolved Governing Body, still claiming to be the Church, filed a Further Response of St. John's Baptist Church on April 7, 2015, continuing to argue that the Governing Body now constitutes the Church.   (*See* **Exhibit 11**, Further Response of St. John's Baptist Church, filed by the same individuals formerly comprising the Governing Body with the El Paso County District Court on April 7, 2015.)   In support thereof, the Governing Body, claiming to be the Church, filed an affidavit signed by sixty-six individuals asserting to be members of the Church. (*Id.* at ¶ 2.)   However, the individuals signing the affidavit were the same individuals that constituted the Governing Body.   For example, James H. Theus filed an affidavit, sworn under penalty of perjury, that he holds the position of "Trustee" of the new unincorporated association of St. John's Baptist Church.   (*See* **Exhibit 12**, Affidavit of James H. Theus filed with the El Paso County District Court on April 7, 2015.)   However, in the Governing Body's founding documents, James H. Theus is listed as both the registered agent and incorporator of the Governing Body's corporation.   (*See* **Exhibit 13**, Articles of Incorporation of St. John's Baptist Church Governing Body, Inc., filed with the Colorado Secretary of State on February 9, 2012.)

30.      Further, James H. Theus is the individual who filed the Articles of Dissolution for the Governing Body's corporation, just five days after the Court of Appeals issued its Mandate. (*See* **Exhibit 8**.)   The membership of the Governing Body, and the new unincorporated association

of St. John's Baptist Church, is the same.  The Governing Body simply changed its name to avoid compliance with the Court of Appeals' Mandate.

31.     In Reply, Pastor Sutton again highlighted the absurdity of the Governing Body changing its name to the Church, especially in light of the affidavits purportedly filed on behalf of the Church, containing the names of those constituting the Governing Body, including the Governing Body's incorporator.  (*See* **Exhibit 14**, Further Reply to Further Response of St. John's Baptist Church, filed by the same individuals formerly comprising the Governing Body with the El Paso County District Court on April 8, 2015.)  Pastor Sutton urged the trial court to comply with the Court of Appeals' Mandate by vacating the Default Judgment, and restoring the Church's property to the congregation from which it was taken.  (*Id.* at ¶ 13.)

32.     Unfortunately, despite the obvious deception by the Governing Body, the trial court took no action to restore the historical Church congregation to the Church's property.  The trial court issued an order on April 9, 2015, simply declaring that the Default Judgment is vacated.  (*See* **Exhibit 15**, Order entered by the Honorable Barbara L. Hughes of the El Paso County District Court on April 9, 2015 ("the **Vacating Order**").)  The District Court acknowledged its "jurisdiction and obligation to restore the parties to their respective positions, as far as possible, as they existed prior to the enforcement of the Order of Default Judgment."  (*See id* at ¶ VI.)  Nevertheless, Judge Hughes made no order restoring the Church's congregation to its property, despite a proposed order filed by Pastor Sutton effectuating such restoration, and despite the Colorado Court of Appeals Mandate requiring her to do so.  Those individuals constituting the Governing Body retain the Church's property to this day, as a direct consequence of the vacated and unconstitutional Default Judgment.

33.     Shortly after the Court issued its Vacating Order, the Governing Body filed a Notice of Voluntary Dismissal under C.R.C.P. 41(a)(1)(A), in a clear effort to maintain status quo after the Court failed to make any ruling in the Vacating Order returning the Church property to Pastor Sutton, as required by the Mandate.

34.     The end result of the Vacating Order and Notice of Dismissal—allowing the Governing Body to retain the Church's property, obtained by the unconstitutional Default Judgment—was in direct conflict with the Court of Appeals' Opinion and Mandate.  As such, Pastor Sutton promptly filed a Motion for Clarification of Order on April 21, 2015, following the Governing Body's refusal to relinquish the Church's property.  (*See* **Exhibit 16**, Motion for Clarification of Order, filed by Pastor Sutton with the El Paso County District Court on April 21, 2015.)

35.     In his Motion for Clarification of Order, Pastor Sutton described the unconstitutional result of the Church losing its property to the Governing Body, and that, despite his vindication at the Court of Appeals, how nothing changed; the individuals composing the Governing Body retained possession of the Church's property, which was forcibly obtained by the unconstitutional and vacated Default Judgment.

36.     In response, the Governing Body argued again that the Church cannot be returned to the Church's congregation, because the Church is not a party to the civil action.  (*See* **Exhibit 17**, Response to Motion for Clarification of Order, filed by the Governing Body with the El Paso County District Court on May 12, 2015, at ¶ 9.)  Ironically, and as stated in the prior filing, this was a key reason why the Default Judgment was unconstitutional in the first place.  As noted by the Court of Appeals, the Default Judgment improperly awarded the Governing Body all the

property of the Church, after the Governing Body removed the Church as a party to the action. (*See* **Exhibit 2** at 18-20.)   The Church was, in fact, an indispensable party to the action, and improperly and unconstitutionally lost its property through the Default Judgment.  (*Id.*)   For this reason, the Court of Appeals issued its Mandate to vacate the Default Judgment.  (**Exhibit 3** at 1.)

37.     Nevertheless, the Governing Body argued that it could not be forced to return the Church's property to the Church, because the Church was not a party to the lawsuit the Governing Body commenced.  (*See* **Exhibit 17**, Response to Motion for Clarification of Order, filed by the Governing Body with the El Paso County District Court on May 12, 2015, at ¶ 9.)

38.     Despite an indisputable showing that the Governing Body continued to retain control of the Church's property following vacation of the Default Judgment, the trial court declined to take any action to restore the Church's property to the Church, stating:

> The Court declines to provide 'specific instructions' to effectuate 'compliance' with the April 9, 2015 Order finding its Order consonant with the Colorado Court of Appeals Order and Mandate including, but not limited to, the prohibition against making unconstitutional determinations as to internal governance and organizations of the Church.

(**Exhibit 18**, Order entered by the Honorable Barbara L. Hughes of the El Paso County District Court on June 26, 2015.)

39.     In a last attempt to get the trial court to properly issue an order effectuating its ruling vacating the Default Judgment, on May 3, 2016, Pastor Sutton filed a Petition Under C.A.R. 21 for a Rule to Show Cause, asking the Colorado Supreme Court to issue an Order to Show Cause to the El Paso County District Court to comply with the Mandate and return Church property to Pastor Sutton and St. John's.  The Colorado Supreme Court summarily denied the petition on May 9, 2016.

40.     To this day, the Governing Body retains exclusive control over the Church's property.  The Church's historical congregation, under the direction and ministry of Pastor Sutton, remains barred from the Church's premises.

## COUNT I
## (DECLARATORY JUDGMENT)

41.     Plaintiffs hereby incorporate paragraphs 1 through 40 of the Complaint by reference, as if fully set forth herein.

42.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, "[i]n a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  This declaration when made "shall have the force and effect of a final judgment or decree and shall be reviewable as such."  (*Id.*)

**The Court Has Jurisdiction of the Parties and of the Subject Matter**

43.     "The Declaratory Judgment Act of 1934, in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense."  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40, 57 S. Ct. 461, 463 (1937).  Thus to make such a declaration, the Court must not only have jurisdiction of the parties, but also the subject matter.

44.     The general rule "is that an action for a declaratory judgment will invoke federal question jurisdiction only if the coercive action that would have been brought (were declaratory judgments not available) would have been within that jurisdiction."  13D Wright & Miller § 3566, pp. 275–76.  The Constitution vests federal courts with the authority to hear cases "arising under

th[e] Constitution [or] the Laws of the United States." U.S. Const. art III, § 2; *Powell v. McCormack*, 395 U.S. 486, 514, 89 S. Ct. 1944, 1960 (1969).

45.     Moreover, Congress vests federal district courts with subject-matter jurisdiction over cases involving questions of federal law: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  The United States Supreme Court has recognized that although the grant of jurisdiction in § 1331(a), while made in the language used in Art. III of the United States Constitution, is not in all respects co-extensive with the potential for federal jurisdiction found in Art. III," it has "nevertheless, [] generally been recognized that the intent of the drafters was to provide a broad jurisdictional grant to the federal courts."  *Powell*, 395 U.S. at 515.

46.     Here, this Court has jurisdiction over the parties because the parties reside in Colorado and all of the acts leading up to the controversy took place in Colorado.  Moreover, this Court has subject matter jurisdiction to hear this case because Plaintiffs are asking the Court to enforce a Colorado Court of Appeals Mandate that was granted based on violations of the First and Fourteenth Amendments of the United States Constitution.

47.     Specifically, the Default Judgment was vacated by Mandate of the Colorado Court of Appeals on March 23, 2015, because the Default Judgment made unconstitutional determinations regarding internal Church governance in violation of the First Amendment.

48.     The First Amendment, applicable to the states through the Fourteenth Amendment, *see, e.g.*, *Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 441 (1969), precludes civil courts from making determinations on matters pertaining to a religious organization's internal governance, organization, faith, discipline, polity,

or ecclesiastical rule, custom, or law.  *Serbian E. Orthodox Diocese for U.S. of Am. & Canada v. Milivojevich*, 426 U.S. 696, 709, 713 (1976). Similarly, a court may not make determinations that effectively appoint a church's pastor, *see Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. ___, 132 S. Ct. 694, 703 (2012), and must accept the decisions of the highest judicatories of a religious organization on matters of internal organization or ecclesiastical rule, *see Serbian E. Orthodox Diocese*, 426 U.S. at 713.

49.     Here, the Court of Appeals found the Default Judgment improperly barred Pastor Sutton, the acting Senior Pastor of the Church, from the Church premises without prior written permission.  By excluding Pastor Sutton from the premises without written permission, the trial court constructively terminated Pastor Sutton from his position as Senior Pastor.  Without being present at the Church, Pastor Sutton could not tend to the congregation, perform administrative functions, or perform other tasks delegated to the Senior Pastor in the Church bylaws.

50.     This order was a violation of the First Amendment because it made a de facto determination regarding the Church's chosen pastor, purporting to remove the Church's chosen pastor, and determined for the Church who represented its interests, a governing decision belonging only to the Church.  *See Serbian E. Orthodox Diocese*, 426 U.S. at 709, 713; *Hosanna-Tabor Evangelical Lutheran Church & Sch.* 132 S. Ct. at 703.  The trial court was required to accept the decisions of the highest judicatories of St. John's on matters of internal organization or ecclesiastical rule.  *See Serbian E. Orthodox Diocese*, 426 U.S. at 709, 713; *Jones v. Crestview S. Baptist Church*, 192 P.3d 571, 573 (Colo. App. 2008) (concluding that the trial court properly ruled that the First Amendment precluded it from exercising subject matter jurisdiction in a dispute regarding whether a pastor had properly performed his duties).  Thus the trial court lacked authority

to enter the Default Judgment.  For the same reason, the allegations in the Governing Body's first amended complaint could not be deemed admitted as true in the Default Judgment.

51.     Further, the Court of Appeals found the Default Judgment improperly awarded all of the Church's property to an outside corporation, the Governing Body, while the Church was not even a party to the action, in violation of the due process clause of the Fourteenth Amendment, which provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  (*See* **Exhibit 2**.)  Specifically, the Court of Appeals found that the Church was an indispensable party to this action as it related to ownership of the real property, and that the affidavit in support of the Governing Body's Motion for Default Judgment failed to provide sufficient facts to warrant any relief on that issue.  Fundamental due process requires that those parties whose interests are at stake or will be affected by a judgment be present before the court. *Hidden Lake Dev. Co. v. Dist. Court*, 183 Colo. 168, 172-74, 515 P.2d 632, 635 (1973).  A court's judgment is a nullity when an indispensable party is not joined in the action.  *Id.* (citing *Hennigh v. Bd. of Cnty. Comm'rs*, 168 Colo. 128, 450 P.2d 73 (1969)).

52.     Currently, the Mandate has not been properly enforced, and thus Defendant continues to violate Plaintiffs' constitutional rights.  Thus an Article III case or controversy existed at the time Plaintiffs made their claim for declaratory relief, and the controversy continues to exist.

**Cause Over Which the Court Has Subject Matter Jurisdiction is "Justiciable"**

53.     In addition to the Court having jurisdiction of the parties and of the subject matter, to invoke the jurisdiction of the federal courts, parties seeking declaratory judgments must have an actual case or controversy to satisfy the Article III requirements of justiceability.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007); *Floyd's 99*

*Holdings, LLC v. Woodrum*, No. 08-cv-01321-MSK-BNB, 2009 U.S. Dist. LEXIS 24271, at *8 (D. Colo. Mar. 24, 2009).  "Controversy" in this sense must be one that is appropriate for judicial determination and not a dispute of a hypothetical or abstract character.  *Aetna Life Ins. Co.*, 300 U.S. at 240.  In other words, the question in each case is whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *MedImmune, Inc.*, 549 U.S. at 118; *Floyd's 99 Holdings, LLC*, 2009 U.S. Dist. LEXIS 24271, at *9.

54.     The standing doctrine is rooted in Article III's "case or controversy" requirement and is used to determine whether a plaintiff has a personal stake in the outcome of a case.  To establish standing to bring a claim for declaratory judgment, Plaintiffs must show: (1) injury in fact; (2) the injury is fairly traceable to the challenged action; and (3) a likelihood that the injury will be redressed by a favorable decision.  In other words, the dispute among the parties must be definite and concrete, touching the legal relations of interested parties having adverse legal interests, and must be able to be resolved through a decree of a conclusive character.

55.     Here, the facts alleged show there is a substantial controversy among Pastor Sutton, St. John's and the Governing Body having adverse legal interests.  As set forth in the Colorado Court of Appeals Mandate, this matter involves an egregious case of constitutional violations committed by the Governing Body against plaintiff Pastor Sutton; which violations, though adequately remedied by the Mandate, remain inexplicably in place today.

56.     Moreover, the controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  As stated above, the constitutional violations were confirmed

by the Colorado Court of Appeals, and such violations continue to inflict Pastor Sutton and St. John's, despite a Mandate to the trial court to vacate the Default Judgment, *see* **Exhibit 3**. While the Vacating Order of the trial court purported to vacate the Default Judgment, *see* **Exhibit 15**, it did not contain any specific orders to the parties in order to effectuate the order, or to "place the parties in the position they occupied before entry of judgment."  47 AM. JUR. 2d *Judgments* § 714; *Ditto v. McCurdy*, 510 F.3d 1070, 1077 (9th Cir. 2007) ("[W]hen a judgment has been set aside, the case stands as if that judgment had never occurred in the first place.").  Pastor Sutton and St. John's seek a declaration from this Court which simply acknowledges the violation of Plaintiffs' constitutional rights and gives effect to the Court of Appeals Mandate, and enforces the Vacating Order, which declaration would clearly resolve the controversy.

57.     The standing requirement under Article III's "case or controversy" is also met because the above facts demonstrate Plaintiffs have a personal stake in the outcome of this case. An injury in fact is present because Pastor Sutton continues to be locked out of the Church, and has not been restored his position as Senior Pastor of the Church.  Moreover, St. John's assets continue to be in the possession of and squandered by the Governing Body, and its bylaws trampled upon.  These injuries are directly traceable the Default Judgment, which should have been properly vacated by the Mandate and the Vacating Order over a year ago, but which in effect still remains in place today.  Lastly, a declaratory judgment rendered by this Court will surely redress these injuries, as it will order the Governing Body to comply with the Mandate and Vacating Order, in essence giving effect to these orders which were willfully ignored and violated by the Governing Body.

**Declaratory Relief is an Appropriate Exercise of the Court's Jurisdiction**

58.     Lastly, in order for this Court to invoke its jurisdiction and issue a declaratory judgment, it must be established that declaratory relief is an appropriate exercise of the Court's discretion in the particular circumstances presented.  *Floyd's 99 Holdings, LLC*, 2009 U.S. Dist. LEXIS 24271, at *7.  Among the factors to be considered are: (i) whether a declaratory action would settle the controversy; (ii) whether it would serve a useful purpose in clarifying the legal relations at issue; (iii) whether the declaratory remedy is being used "merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to 'res judicata'"; (iv) whether the declaratory action would improperly encroach upon state jurisdiction; and (v) whether there is an alternative remedy that is better or more effective.  *Floyd's 99 Holdings, LLC*, 2009 U.S. Dist. LEXIS 24271, at *18-19.

59.     <u>First</u>, this declaratory action would surely settle the controversy among the parties simply with the issuance of a judgment ordering the Governing Body to cease constitutional violations and comply with the Mandate and Vacating Order by restoring Pastor Sutton to his position and returning Church property to the Church's rightful agent, Pastor Sutton.

60.     <u>Second</u>, this declaratory action would serve a useful purpose in clarifying the legal relations at issue, as the federal courts are especially tasked with hearing matters under the United States Constitution.

61.     <u>Third</u>, Plaintiffs are not seeking a declaratory remedy for "procedural fencing" purposes, or for res judicata purposes.  Plaintiffs simply seek to have their constitutional rights acknowledged and enforced as addressed by the Mandate and the Vacating Order.

62.     Fourth, this declaratory action does not improperly encroach upon state jurisdiction because in this case the trial court specifically declined to make any rule of law or even to take action to enforce its Vacating Order, for fear that it was overstepping its boundaries under the First and Fourteenth Amendments of the United States Constitution.   Under these facts, it is not only appropriate, but likely necessary for this Court to take action to complete the task set out by the Colorado Court of Appeals in the Mandate.

63.     Last, a federal declaratory action is necessary here because there is no other better or more effective alternative remedy available to Plaintiffs.   Pastor Sutton has already obtained vindication from the Colorado Court of Appeals' Mandate dated March 23, 2015, vacating the unconstitutional Default Judgment.   (**Exhibit 3**.)   The Mandate as stated above already vacated the Default Judgment issued by The Honorable Barbara L. Hughes, which had unlawfully removed possession of the Church's real and personal property from the Church (even though the Church was not a party to the action) and made unconstitutional determinations regarding Church governance.   As a direct result of the Default Judgment, the Court of Appeals found that the Governing Body unconstitutionally gained control over the Church's property.

64.     However, effectuating the Mandate has been an act in futility because the Governing Body tactically dissolved itself and then voluntarily dismissed its case against Pastor Sutton to avoid the effect of the Mandate, and the trial court has refused on two separate motions from Pastor Sutton to effectuate the Mandate and issue an order requiring that the Church's property be returned to the Church.   While the trial court purported to vacate the Default Judgment, it made no orders to put the parties back in "status quo," or back in the positions they occupied before entry of the Default Judgment.   To effectuate the Mandate, the District Court was not only

required to issue an order vacating the Default Judgment, it was also required to issue an order returning immediate possession and control of the Church, its governance, its real and personal property, and its bank accounts to Pastor Sutton, and the Deacon Board.   In its order acknowledging the Mandate and vacating the Default Judgment, the District Court seemed to conclude that it could not issue any further orders in the case because it now lacked authority to enter orders interfering with ecclesiastical matters, and because it would violate due process due to the absence of the Church, an indispensable party.   Thus Pastor Sutton and St. John's have no other recourse than the United States District Court for the District of Colorado.

65.     Because the District Court has refused to effectuate the Mandate, the effects of the unconstitutional Default Judgment remain in effect today—the Governing Body continues to unlawfully retain control over all of the Church's property, and the Church is still locked out of its own building.   The Church congregation continues to meet under the direction and ministry of Pastor Sutton, but for almost three years has been locked out of its own Church building.

66.     Pastor Sutton and St. John's now seek a declaratory judgment under 28 U.S.C. § 2201, declaring that, pursuant to the Mandate, the First and Fourteenth Amendments to the United States Constitution, and the District Court's Vacating Order, the individuals formerly known as the Governing Body, and now consisting of the "unincorporated association of St. John's Baptist Church," or any other individuals purporting to currently hold control over Church property, as well as any of their directors, officers, agents, employees, or attorneys, must return immediate possession and control of the Church, its governance, its real and personal property, and its bank accounts to Pastor Sutton, and the Deacon Board, thus placing the parties back in the position they were in before the Default Judgment was rendered.

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendant for a declaratory judgment declaring that (1) pursuant to the Mandate, the First and Fourteenth Amendments to the United States Constitution, and the trial court's Vacating Order, Plaintiffs are entitled to immediate possession and control of the Church, its governance, its real and personal property, and its bank accounts; (2) pursuant to the Mandate, the First and Fourteenth Amendments to the United States Constitution, and the trial court's Vacating Order, the individuals formerly known as the Governing Body, and now consisting of the "unincorporated association of St. John's Baptist Church," or any other individuals purporting to currently hold control over Church property, as well as any of their directors, officers, agents, employees, or attorneys, must return immediate possession and control of the Church, its governance, its real and personal property, and its bank accounts to Pastor Sutton, and the Deacon Board, thus placing the parties back in the position they were in before the Default Judgment was rendered; (3) Plaintiffs are entitled to all of their costs, including reasonable attorneys' fees, and interest as allowed by law, for having to make numerous state and federal court filings to enforce their rights despite two orders in place granting Plaintiffs the requested relief; and (4) Plaintiffs are entitled to such further relief as the Court deems just and proper.

## COUNT II
## (PRELIMINARY AND PERMANENT INJUNCTION)

67.     Plaintiffs hereby incorporate paragraphs 1 through 66 of the Complaint by reference, as if fully set forth herein.

68.     Under 28 U.S.C. § 2202, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."  A declaratory judgment can be used as a

predicate to further relief, such as an injunction or attorneys' fees.  *See, e.g., Powell v. McCormack*, 395 U.S. 486, 499, 89 S. Ct. 1944, 1952 (1969) (citing 28 U. S. C. § 2202; *Vermont Structural Slate Co. v.  Tatko Brothers Slate Co.*, 253 F.2d 29 (2d Cir. 1958); *United States Lines Co. v. Shaughnessy*, 195 F.2d 385 (2d Cir. 1952)).

69.     A party seeking injunctive relief must establish: (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980); *Mantle Ranches v. United States Park Serv.*, 945 F. Supp. 1449, 1452 (D. Colo. 1996).

70.     <u>First</u>, there is more than a substantial likelihood that Plaintiffs will eventually prevail on the merits; the Colorado Court of Appeals issued a Mandate which ordered the trial court to undo the Default Judgment based on constitutional violations, and rendered a detailed decision which found the trial court could not make any ruling on matters pertaining to a religious organization's internal governance, organization, faith, discipline, polity, or ecclesiastical rule, custom, or law pursuant to the First Amendment, applicable to the states through the Fourteenth Amendment.

71.     <u>Second</u>, there has been a substantial showing that Plaintiffs will suffer irreparable injury unless the injunction issues.  Despite numerous orders granting Plaintiffs an immediate return of possession and control of the Church, its governance, its real and personal property, and

its bank accounts, Defendant refused to follow court orders and to this day improperly and unconstitutionally retains control of Plaintiffs' assets and governance.

72.     Also, upon information and belief, Defendant is currently squandering Church assets, and selling off Church property, likely in an attempt to pay off debts it has incurred during the time it improperly retained possession of Church property.

73.     Defendant's wrongful actions have caused and continue to cause Plaintiffs permanent and irreparable injury for which they have no adequate remedy at law.

74.     Third, Defendant's actions to date are alone proof that the threatened injury to Plaintiffs outweighs whatever damage the proposed injunction may cause Defendant.  Defendant has not only acted with such malice and ill-regard for Plaintiffs' constitutional rights, Defendant continues to squander Church property and trample upon its bylaws, while Plaintiffs are forced to sit idly by, waiting for the trial court to effectuate the Vacating Order.  In fact, Defendant's threatened injury, having to return property and to return Pastor Sutton to his position as Senior Pastor, cannot be deemed an injury at all as it was not entitled to such a determination in the first place.

75.     Last, an injunction, if issued, would not be adverse to the public interest, but would in fact promote the public interest in that it would ensure court orders are properly enforced and ensure that constitutional rights are promoted and protected.

76.     Plaintiffs are thus entitled to have this Court enjoin Defendant from taking any further action to transfer, assign, sell, deplete, destroy, dissipate, or disburse any Church property or adversely affect Church property, or to otherwise exhibit improper control over the Church, its governance, its real and personal property, and its bank accounts.

77.     Plaintiffs request this Court grant them a preliminary injunction as well as a hearing to determine whether to put in place a permanent injunction, forever enjoining the individuals formerly known as the Governing Body, and now consisting of the "unincorporated association of St. John's Baptist Church," or any other individuals purporting to currently hold control over Church property, as well as any of their directors, officers, agents, employees, or attorneys, from transferring, assigning, selling, depleting, destroying, dissipating, or disbursing any Church property or from taking any further action against Pastor Sutton or the Church to usurp control over the Church or its property, without first pursuing a new lawsuit against the Church.

WHEREFORE, Plaintiffs seek an order (1) that judgment be entered in their favor and against Defendant, forever enjoining the individuals formerly known as the Governing Body, and now consisting of the "unincorporated association of St. John's Baptist Church," or any other individuals purporting to currently hold control over Church property, as well as any of their directors, officers, agents, employees, or attorneys, from transferring, assigning, selling, depleting, destroying, dissipating, or disbursing any Church property, or from taking any further action against Pastor Sutton or the Church to usurp control over the Church or its property, without first pursuing a new lawsuit against the Church; (2) granting Plaintiffs all of their costs, including reasonable attorneys' fees, and interest as allowed by law; and (3) granting such further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against Defendant upon each claim for relief asserted herein, and that this Court:

1.     Enter a declaratory judgment finding that pursuant to the Mandate, the First and

Fourteenth Amendments of the United States Constitution, and the trial court's

Vacating Order, Plaintiffs are entitled to immediate possession and control of the

Church, its governance, its real and personal property, and its bank accounts;

2.     Enter a declaratory judgment finding that pursuant to the Mandate, the First and

Fourteenth Amendments of the United States Constitution, and the trial court's

Vacating Order, the individuals formerly known as the Governing Body, and now

consisting of the "unincorporated association of St. John's Baptist Church," or any

other individuals purporting to currently hold control over Church property, as well as

any of their directors, officers, agents, employees, or attorneys, must return

immediate possession and control of the Church, its governance, its real and personal

property, and its bank accounts to Pastor Sutton, and the Deacon Board, thus placing

the parties back in the position they were in before the Default Judgment was

rendered;

3.     Issue a preliminary injunction and permanent injunction upon hearing, enjoining the

individuals formerly known as the Governing Body, and now consisting of the

"unincorporated association of St. John's Baptist Church," or any other individuals

purporting to currently hold control over Church property, as well as any of their

directors, officers, agents, employees, or attorneys, from transferring, assigning,

selling, depleting, destroying, dissipating, or disbursing any Church property, or from

taking any further action against Pastor Sutton or the Church to usurp control over the

Church or its property, without first pursuing a new lawsuit against the Church;

27

4.        Award Plaintiffs their costs, including attorneys' fees, in having to file this lawsuit, as well as all of the costs and reasonable attorneys' fees incurred in having to make numerous filings in the trial court and state appellate courts to enforce the Court of Appeals Mandate and Vacating Order; and

5.        Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 10th day of June, 2016

BUSINESS LAW GROUP

By:    */s/ Adam L Weitzel*
        Adam L Weitzel, #35180
        Victoria E. Edwards, #39838
        BUSINESS LAW GROUP
        90 S. Cascade Ave., Ste 840
        Colorado Springs, Colorado 80903
        (719) 355-8840 (telephone)
        (719) 694-3714 (fax)
        adam@businesslawgroup.us

        ATTORNEYS FOR PLAINTIFFS

## Verification

I, Reverend Willie J. Sutton, Jr., declare as follows:

1.      I am a Plaintiff in the present case, a citizen of the United States of America, and a resident of the State of Colorado.  I am a representative of St. John's Baptist Church.

2.      I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief;* and if called on to testify I would competently testify as to the matters stated herein.

3.      I have personal knowledge of St. John's Baptist Church, its activities, and its intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify I would competently testify as to the matters stated herein.

4.      I verify under penalty of perjury under the laws of the United States of America and Colorado that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities, and my intentions are true and correct, as are the factual statements concerning St. John's Baptist Church, its activities, and its intentions.

_____
Willie J. Sutton, Jr.

STATE OF COLORADO     )
                      ) ss.
COUNTY OF EL PASO     )

Subscribed and sworn to before me by Willie J. Sutton, Jr this _ day of June, 2016.

_____
[SEAL]                              Notary Public
                                    My commission expires: 10/17/2017

SHAWNA M ALVAREZ
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID # 19974000276
MY COMMISSION EXPIRES OCTOBER 17, 2017