# EXHIBIT 7

**PASTOR WILLIE J. SUTTON, JR.**, and **ST. JOHN'S BAPTIST CHURCH, a Colorado nonprofit corporation**

**vs.**

**ST. JOHN'S BAPTIST CHURCH GOVERNING BODY, INC., a Colorado nonprofit corporation**

**Verified Complaint for Declaratory and Injunctive Relief**

| | DATE FILED: April 2, 2015 1:47 PM <br> FILING ID: 261401985EB9E <br> CASE NUMBER: 2012CV4962 |
|---|---|
| DISTRICT COURT, COUNTY OF EL PASO, COLORADO <br> 270 South Tejon, P.O. Box 2980 <br> Colorado Springs, CO 80901-2980 | |
| Plaintiff: <br><br> ST. JOHN'S BAPTIST CHURCH GOVERNING BODY, INC., a Colorado nonprofit corporation <br> v. <br><br> Defendant: <br><br> WILLIE J. SUTTON, JR. | ▲ COURT USE ONLY ▲ |
| Attorney for Defendant: <br> Adam L Weitzel, #35180 <br> Law Office of Adam L Weitzel, P.C. <br> 90 S. Cascade Ave., Ste 840 <br> Colorado Springs, CO 80903 <br> Telephone: (719) 355-8840 <br> Fax: (719) 694-3714 <br> E-mail: adam@businesslawgroup.us | Case Number: 2012CV4962 <br><br> Division: 13 |
| **EMERGENCY MOTION FOR IMMEDIATE ENFORCEMENT <br> OF THE APPELLATE MANDATE <br> OR INJUNCTION TO PRESERVE ASSETS** | |

**C.R.C.P. 121 § 1-15 ¶ 8 Certification**: Defendant's counsel has attempted to confer in good faith with Plaintiff's counsel about this motion, and left a message with Plaintiff's counsel yesterday, but has not yet received a response in the limited time available before filing. Defendant's counsel anticipates that Plaintiff will oppose the relief requested in this motion.

Defendant, Willie J. Sutton, Jr., by and through his undersigned legal counsel, hereby respectfully submits his Emergency Motion For Immediate Enforcement of the Appellate Mandate or Injunction to Preserve Assets, and in support thereof states:

## FACTUAL HISTORY

St. John's Baptist Church, Inc., (the "**Church**") is El Paso County's oldest African American Baptist church. On September 30, 2007, the Church, through its authorized Deacon Board, extended a call to Reverend Willie J. Sutton, the Defendant, to become the senior pastor

of the Church. Reverend Sutton accepted the call and was installed as the senior pastor of the Church through a formal ceremony on or around July 13, 2008.

Ten days later, certain members of the Church, some of whom are current members of the Plaintiff corporation, filed a lawsuit seeking to have the Court direct the Church's Deacon Board to call a special meeting for the removal of Reverend Sutton as the Church's pastor. This lawsuit was dismissed by the Court on September 23, 2009, after a full year of litigation, when the parties filed a stipulated motion to dismiss with prejudice.

In or around October 2011, certain members of the Church, many of whom are current members of the Plaintiff corporation, sought to call a meeting of the Church's membership to once again dispute Reverend Sutton's role as the Church's senior pastor. This meeting was not sanctioned by the Church, nor was it called or conducted in accordance with the Church's bylaws or other governing documents. Nevertheless, members of the Plaintiff corporation, without any authority to act on behalf of the Church, took it upon themselves to declare that Reverend Sutton's employment as senior pastor of the Church was somehow terminated at their sold discretion. The presiding bodies within the Church refused to act upon this unsanctioned vote, and Reverend Sutton continued to act in his role as the senior pastor of the Church.

On December 30, 2011, many, if not all, of the individual members of the Plaintiff corporation filed a **second lawsuit** against Reverend Sutton, the Church, members of the Church's Deacon Board, and the Church's Treasurer (case number 2011CV6610). Again, these individuals were seeking to have the Court remove Reverend Sutton as the senior pastor of the Church.

While the second lawsuit was pending, two individual members of the Plaintiff corporation filed a **third lawsuit** against Reverend Sutton and a member of the Church's Deacon Board for claims of Defamation (case number 2012CV2393). In the settlement discussions that took place, the individual plaintiffs in that case agreed to drop their claims if Reverend Sutton would resign as senior pastor of the Church. Reverend Sutton refused. The second lawsuit was consolidated with the third, and was eventually dismissed.

The third lawsuit was eventually resolved upon the Church's motion for summary judgment, by the Honorable Judge Miller, on June 15, 2012. In his order dismissing the third case, Judge Miller provided substantial analysis on the numerous *First Amendment* proscriptions against the relief sought. At one point, however, Judge Miller wrote, "One area in which the courts have been more inclined to become involved in internal church disputes is the determination of the legal title of the property held by the church." Order Re: Defense Motion for Summary Judgment and Plaintiff's Motion to Amend First Amended Complaint, pg. 5, issued by the Honorable David G. Miller on June 15, 2012, a copy of which is attached hereto as Exhibit 8.

Four months later, Plaintiff filed this "property" lawsuit against Reverend Sutton, seeking legal right to the Church's real property. This lawsuit is the **fourth lawsuit** brought by Plaintiff,

2

or individual members of the Plaintiff corporation, against Reverend Sutton and the Church, all by the same attorney, and all within a 10-month window. Overwhelmed by the number of lawsuits filed against him, with pleadings in excess of 1,400 pages at that point, and without the benefit of legal counsel at the time, Reverend Sutton failed to file his Answer to Plaintiff's Complaint in the fourth lawsuit filed against him. Plaintiff subsequently obtained an Order of Default Judgment on March 22, 2013 (the "**Default Judgment**"), a copy of which is attached hereto as Exhibit 1.

The form of the Default Judgment was prepared by Plaintiff's legal counsel, and included findings and holdings in gross violation of the *First Amendment*. It found that Reverend Sutton did not represent the legal interests of the Church, and that the Plaintiff corporation did. It included significant due process issues by making determinations about the Church and its property, when the Church was never named as a party to the lawsuit. Plaintiff's counsel also included language designed to bypass the automatic 14-day stay under C.R.C.P. 62(a), before an order may be enforced, which then allowed the Plaintiff corporation to take *immediate* possession of the Church's real and personal property, and summarily bar Reverend Sutton's presence on the Church's property. Neither Reverend Sutton, nor the Church, were afforded the benefit of the automatic 14-day stay before enforcement of the Default Judgment, which would have given them time to file an appropriate motion to protect or preserve their interests, before possession of the Church's property was forcefully seized by the Plaintiff. Rather, Reverend Sutton and the Church lost their property interests immediately.

The same afternoon that the Default Judgment was entered, members of the Plaintiff corporation arrived at the Church with members of the Colorado Springs Police Department, and forcibly removed Reverend Sutton from the Church as though he were a criminal. Reverend Sutton first became aware of the Default Judgment as he was being escorted from the Church, while the Plaintiff corporation seized control of the Church's real and personal property. As a result of the Default Judgment, Reverend Sutton was effectively terminated from his role as the senior pastor of the Church. His employment was terminated. All of the real and personal property of the Church was taken from the Church and its chosen leaders, and possession and control thereof was given to Plaintiffs.

Two years later, almost to the day, the Court of Appeals vacated the Default Judgment and remanded the case with directions through its Mandate, issued on March 23, 2015. A copy of the Mandate is attached as Exhibit 2. The Mandate directs the enforcement of the final Opinion of the Court of Appeals, announced a year earlier, on May 1, 2014 ("**Opinion**"), a copy of which is attached as Exhibit 3.

Through its Opinion, the Court of Appeals found that Plaintiff's Default Judgment made decisions regarding the ecclesiastical internal governance and organization of the Church, which are precluded by the *First Amendment*, and that this Court lacked authority to enter the Default Judgment. Opinion, pgs. 13-14. Further, the Court of Appeals found that the Default Judgment violated fundamental principles of due process in making decisions regarding the real property of the Church, when the Church was never joined as a party. Opinion, p. 15.

3

In its Conclusion paragraph, the Court of Appeals vacated the Default Judgment and remanded the case for determination of the underlying real property issues if: (i) Plaintiff files a second amended complaint including the Church as a party; and (ii) this Court determines, in its judgment, that it can apply neutral principles of law in doing so.

## PROCEDURAL HISTORY

Time is of the essence in this matter. Defendant has been wrongfully deprived of his ministry, his congregation, his employment, his Constitutional rights, and his dignity for two years while this matter has been under appeal. It is time to immediately restore Reverend Sutton as the senior pastor of the Church, and to return the Church's real and personal property to the Church, its senior pastor, and the Church's chosen leaders.

Plaintiff has taken every advantage to stall, delay, obfuscate, and deceive.

Early in this case, while the deadline for filing its appeal was running, Defendant obtained an emergency hearing, to be held by telephone on Thursday, May 9, 2013, at 8:45 a.m. The emergency nature of the hearing was to allow this Court an opportunity to hear Defendant's Motion to Set Aside Default Judgment. Defendant's deadline for filing its Notice of Appeal expired the following day, May 10, 2013. This was the last opportunity for this Court to hear arguments on Defendant's Motion to Set Aside Default Judgment.

Despite having a full week's notice of the emergency hearing, Mr. Hopkins, Plaintiff's counsel at the time, quickly caught a flight to Arizona the night before the hearing, on Wednesday, May 8, 2013. During the telephone conference with the Court, Mr. Hopkins made representations that he was out of the state and would be unable to adequately review and respond to Defendant's Motion before the 21-day period generally allowed for a response.

Mr. Hopkins failed to inform this Court, however, that he was licensed to practice law in Arizona, and was working from his Arizona office on the day of the hearing. Further, Mr. Hopkins also failed to inform this Court that he had previously sent Defendant's counsel two separate six-page drafts of a detailed letter, responding on a paragraph-by-paragraph basis, to Defendant's Motion to Set Aside Default Judgement. This letter was sent on May 2, 2013, a full week before the telephone conference. A copy of Mr. Hopkin's revised letter, dated May 2, 2013 (8:20 a.m. MDT) showing his detailed rebuttal, as well as his office address in Arizona, is attached as <u>Exhibit 4</u>. Obviously, he had adequate time to review and respond to Defendant's Motion, because he had already done so a full week before the hearing.

These misrepresentations and lack of candor to the Court prompted this Court to refrain from entering a decision on Defendant's Motion to Set Aside Default Judgment. This Court was unwilling to grant Defendant's Motion to Set Aside Default Judgment before Mr. Hopkins was given the adequate time to respond that he demanded. Without a resolution, Defendant was obligated to file his Notice of Appeal the following day, in order to preserve his rights, as well as

the rights of the Church. Had Plaintiff's counsel been candid to the Court, this entire appeal may have been avoided.

The appeal took a full year. On March 20, 2014, the Court of Appeals announced its original opinion, vacating the Default Judgment. The mandate of the Court of Appeals was scheduled to issue 43 days later, on May 3, 2014.

Yet, on April 1, 2014, Plaintiff filed its Petition for Rehearing with the Court of Appeals. This triggered an automatic stay on the issuance of the mandate. On May 1, 2014, the Court of Appeals denied Plaintiff's Petition for Rehearing and issued its final Opinion. At that point, the mandate of the Court of Appeals was scheduled to issue fifteen days later, on May 30, 2014.

Yet, on May 21, 2014, Plaintiff's current counsel of record filed Plaintiff's Petition for Writ of Certiorari with the Colorado Supreme Court. Again, this stayed any issuance of the mandate of the Court of Appeals. Another full year later, on March 23, 2015, the Colorado Supreme Court issued its Order of Court, denying Plaintiff's Petition for Writ of Certiorari. The Court of Appeals issued its Mandate just two hours later.

At this point, Reverend Sutton had been wrongfully barred from his Church, his ministry, and his congregation for two years and ten days. This injustice should not be allowed to continue another day.

Defendant's counsel immediately conferred with Plaintiff's counsel by email for the prompt and peaceful return of the church and its property to Reverend Sutton and the Church's chosen leaders. *See* email from Defendant's counsel to Plaintiff's counsel dated March 23, 2015, at 12:29, p.m., a copy of which is attached as <u>Exhibit 5</u>. At that time, Defendant's counsel expressed his demand that the property of the Church be returned prior to Easter Sunday, April 5, 2015. If Plaintiff could not agree to such terms, Defendant's counsel stated his intention to immediately file a motion with this Court to enforce the Mandate on March 23, 2015.

Plaintiff's counsel sought time to confer with his clients, which Defendant granted. Plaintiff's counsel responded in an email dated Wednesday, March 26, 2015, confirming that Plaintiff would participate in a peaceful return of the Church's property. Plaintiff's Counsel proposed a meeting between the parties the following Thursday, April 2, 2015, to finalize the transfer before Easter Sunday. A copy of Plaintiff's Counsel's email is attached as <u>Exhibit 6</u>. In reliance on Plaintiff's representations, Defendant withheld his motion to enforce the Mandate.

Yet, Plaintiff has again sought to delay the effect of the Mandate. On Wednesday, April 1, 2015, the afternoon before the transition was to take place, Plaintiff's counsel advised Defendant's counsel that Plaintiff, "is not in a mood to turn over the keys." *See* email from Plaintiff's counsel to Defendant's counsel dated April 1, 2015, a copy of which is attached as <u>Exhibit 7</u>. Plaintiff will never be in the mood to return the Church's property. They have maliciously prosecuted four separate lawsuits toward this end. They have utilized and

5

manipulated every procedural opportunity to delay, prolong, hinder, and harass. Yet, the law demands that the property of the Church be returned to Reverend Sutton immediatelly.

Inasmuch as Plaintiffs are unwilling to voluntarily comply with the Opinion and Mandate of the Court of Appeals Opinion, Defendant must move this Court to immediately enforce the Opinion and Mandate of the Court of Appeals, vacating the Default Judgment, and restoring the parties to their prior respective positions.

## LEGAL ANALYSIS

A "trial court's jurisdiction is restored when the appellate court issues its mandate." People v. Jones, 631 P.2d 1132 (Colo. 1981). The issuance of the mandate is not necessarily the date the order enters, but, by rule, issues a certain period of time after the order is announced. Id. The delay between the announcement of the underlying order and the issuance of the mandate is designed to allow the Court of Appeals to retain jurisdiction of the cause for a fixed period of time, to enable the parties to file an application for rehearing, through which the parties may point out mistakes of law or fact. Norris v. Kelsey, 152 P. 1167, 1168 (Colo. 1915).

By rule, the mandate of the Court of Appeals shall issue 43 days after entry of the judgment. C.A.R. 41(b)(1). The timely filing of a petition for rehearing will stay the mandate until the Court of Appeals has ruled on the petition. Id. If the petition for rehearing is denied, the mandate shall issue 29 days after entry of the order denying the petition. C.A.R. 41(b)(2). This delay gives the petitioner time to file a petition for writ of certiorari or seek other relief.

If the petition for writ of certiorari is denied, there are no further delays before the mandate may issue. There are no other petitions or rehearings available. The opinion of the Court of Appeals is then final. The mandate shall issue.

In this case, the Opinion of the Court of Appeals was announced on May 1, 2014. That was 336 days ago. Plaintiff enjoyed the benefit of the initial 43-day stay after the Opinion was announced. Plaintiff then enjoyed the benefit of a stay while its Petition for Rehearing was under consideration, as well as an additional 29-day stay after its petition for rehearing was denied. Plaintiff enjoyed the benefit of an additional year's stay while its Petition for Writ of Certiorari was under consideration. Plaintiff has maximized every stay and opportunity to delay restoring Reverend Sutton and the Church to their respective positions before the Default Judgment. At this point, though, the stays provided by rule have expired. There are no other delay mechanisms available. Accordingly, the Court of Appeals promptly issued its Mandate upon receipt of the Colorado Supreme Court's order denying Plaintiff's Petition for Writ of Certiorari. This should not come as a surprise to Plaintiff.

Inasmuch as the Mandate of the Court of Appeals has issued, this Court has regained jurisdiction, and the Default Judgment is vacated as of March 23, 2015.

To vacate means "[t]o nullify or cancel; make void; invalidate." Black's Law Dictionary, 1435 (9th Ed. 2009). When a judgement is vacated, "the matter stands precisely as if there had been no judgment." 47 AM. JUR. 2D *Judgments* § 714. The vacated judgment lacks force or effect. Consequently, vacating the judgment "places the parties in the position they occupied before entry of the judgment." Id.; *see* Ditto v. McCurdy, 510 F.3d 1070,1077 (9th Cir. 2007) ("when a judgment has been set aside, the case stands as if that judgment had never occurred in the first place.").

In this case, Reverend Sutton was the senior pastor of the Church before the Default Judgment entered. It is an undisputed fact that Reverend Sutton was in possession and control of the Church and its real and personal property before entry of the Default Judgment. Effecting Reverend Sutton's ouster was the very purpose of the Default Judgment. It was the document relied upon by the Colorado Springs Police Department to forcibly remove Reverend Sutton from the Church, and immediately transfer possession and control of the Church's property to Plaintiff. It was the document that Plaintiff used to wrongfully terminate Reverend Sutton's employment with the Church.

Before the Default Judgment was entered, the Deacon Board exercised authority as the presiding spiritual body within the Church. Its members included Deacon Alex, Deacon Kelly, and Deacon Jenkins, all of whom have been banned from the Church, by Plaintiff, pursuant to the Default Judgment. Before the Default Judgment was entered, Brother Scippio served as the Treasurer of the Church, and oversaw its bank accounts and finances. Brother Scippio has also been banned from the Church, by Plaintiff, pursuant to the Default Judgment.

The Default Judgment specifically ordered that: (1) Plaintiff represents the legal interests of the Church; (2) Reverend Sutton does not represent the legal interests of the Church; (3) Plaintiff has all of the legal rights to the Church edifice; and (4) Reverend Sutton has no legal rights to the Church edifice. Each of these findings and holdings are now vacated. They are null and void. It is if there had been no judgment on these issues, and the Court must place the parties in the relative positions they occupied before entry of the Default Judgment.

There are no other appeals, petitions, responses, arguments, or explanations that Plaintiff can advance under a claim of law to further delay this inevitable result.

Accordingly, the Court must return immediate possession and control of the Church, its governance, its real and personal property, and its bank accounts to Reverend Sutton, and the Deacon Board. This should be done immediately, in order to reduce the risk of further damage to the Church, and Reverend Sutton, caused by Plaintiff's continued delays. For more than two years, Reverend Sutton has been wrongfully denied his rights and position as the senior pastor of the Church. For more than two years, the Church has been denied its real and personal property. No court will ever be able to fully restore everything that Reverend Sutton and the Church have been denied over the last two years. But, the restorative process should begin now.

## ALTERNATIVE NEED FOR IMMEDIATE INJUNCTION

If, for some reason, this Court determines that the Mandate of the Colorado Court of Appeals is not immediately enforceable (and it plainly is), then Defendant moves this Court for an immediate injunction against Plaintiff, enjoining any transfer, assignment, sale, depletion, destruction, dissipation, or disbursement of Church property.

At present, Plaintiff holds complete control over all of the Church's property, including bank accounts and other liquid assets, which legally belong to the Church, by virtue of the vacated Default Judgment. Notwithstanding, Plaintiff has stated through counsel that it is in "no mood" to comply with the decision of the appellate court, and effectuate a peaceful return of Church property to the Church. *See* Exhibit 7. Consequently, Defendant understandably fears the dissipation and possibly transfer of Church assets, and seeks an injunction prohibiting the same.

An injunction is necessary to protect the Church's rights in its own property, which is currently under the exclusive direction and control of Plaintiff. "The underlying purpose of a temporary injunction is to prevent a tort or wrong and to preserve status quo until final hearing and a determination as to the controverted rights of the parties." Spickerman v. Sproul, 328 P.2d 87, 88 (Colo. 1958). Should this Court determine that a final hearing is, for some reason, necessary to determine the rights of the parties (which are already determined by the vacation of the Default Judgment), then, at a minimum, an injunction must issue to "preserve the status quo," and prevent any depletion or destruction of Church assets while the Mandate of the Colorado Court of Appeals is implemented.

## CONCLUSION

WHEREFORE, Defendant, Revered Willie J. Sutton, moves this Court to: (i) enforce the Mandate of the Court of Appeals; (ii) vacate the Default Judgment; (iii) return immediate possession and control of the Church, its governance, its real and personal property, and its bank accounts to Reverend Sutton; (iv) take and enforce all actions necessary to return the parties to their respective positions before entry of the Default Judgment; (v) issue an immediate injunction enjoining Plaintiff from transferring, assigning, selling, depleting, destroying, dissipating, or disbursing any Church property; (vi) award Defendant all of his costs and attorney fees in defending this matter; and (vii) provide such other further relief as this Court deems just and proper.

DATED: April 2, 2015

BUSINESS LAW GROUP

By: /s/ Adam L Weitzel
Adam L Weitzel, #35180
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this the 2nd day of April, 2015, a true and correct copy of the foregoing **Emergency Motion For Immediate Enforcement of the Appellate Mandate or Injunction to Preserve Assets** was served on the following via ICCES:

J. Gregory Walta
J. Gregory Walta, P.C.
1521 Vista Place
Colorado Springs, CO 80905
Greg.walta@gmail.com

Katrina Ruff